[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12759

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTHONY WASHINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20583-PCH-1

_____

Before JILL PRYOR, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Anthony Washington appeals his conviction for possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). He argues that the district court abused its discretion when it refused to give one of his requested jury instructions. He also challenges the constitutionality of § 922(g)(1)'s prohibition on felons possessing firearms and ammunition. After careful consideration, we affirm.

## I.

While on patrol late one night, Miami-Dade police officers Jonathan Marcano and Estuardo Gonzalez observed a Ford Fusion drive into the lane for oncoming traffic. The officers stopped the vehicle, which parked in a nearby driveway.

Marcano approached the driver's side of the vehicle while Gonzalez approached the passenger's side. Marcano tapped the driver's side window and asked the driver to lower it. The driver did not respond. Both officers knocked on the windows several times and repeatedly instructed the occupants to lower the windows. Eventually, the vehicle's doors unlocked. Marcano opened the door on the driver's side of the vehicle. He then asked the driver for identification, but the driver did not respond. Marcano observed that the driver was leaning forward in his seat as if he were trying to hide something. Marcano asked the driver to step out of

the vehicle. As the driver exited the vehicle, Marcano saw a firearm tucked between the driver's seat and the center console.

After seeing the firearm, Marcano asked whether there were any firearms in the vehicle, and the driver gave no response. Eventually, the driver provided identification. Marcano ran a background check and learned that the driver, Washington, was a convicted felon.

While Marcano was speaking with Washington, Gonzalez focused on the passenger, Latoya Benjamin. Benjamin told Gonzalez that she and Washington had been drinking and were "highly intoxicated." Doc. 58 at 135.[1] When Gonzalez asked whether there were any firearms in the vehicle, Benjamin responded that there was a firearm, which was registered to her, in the glove box. Gonzalez ran a check on the vehicle, which showed that it was registered to both Benjamin and Washington.

Because Washington was a convicted felon who had a firearm tucked next to him, Marcano placed him under arrest. When officers recovered the firearm from the vehicle, they found that it was loaded with one bullet. Officers later discovered that Benjamin had purchased the firearm.

Washington was charged with one count of knowingly possessing a firearm and ammunition as a convicted felon. *See* 18 U.S.C. § 922(g)(1). He pleaded not guilty.

---

[1] "Doc." numbers refer to the district court's docket entries.

The case went to trial. Marcano and Gonzalez testified about the traffic stop.[2] The government also called officer Jose Sardina. He testified about an incident that occurred a few months after Washington's arrest. While on patrol, Sardina saw a Ford Fusion with an expired registration sticker. He stopped the vehicle and found that Washington was driving. Washington was alone in the vehicle. Because there was an outstanding warrant for his arrest, Sardina arrested him.

Washington called Benjamin to testify in his defense. She testified that she and Washington had been in an on-again-off-again relationship for several years and had children together. She explained that she co-owned the Ford Fusion with Washington and that she was its main driver.

Benjamin also testified about the firearm found in the vehicle when the officers stopped it. She explained that she had purchased the weapon to protect herself because she lived in a dangerous neighborhood. She told the jury that every time she left the house, she took the gun with her. Usually, she stored the gun in her car's glove compartment. But when she was driving at night, she kept the gun next to her.

Benjamin described the events leading up to the officers' discovery of the gun in the Ford Fusion. That evening, she drove the

---

[2] The parties stipulated that Washington had previously been convicted of a felony, he knew of his felony conviction, and the firearm and ammunition at issue had moved in interstate or foreign commerce.

vehicle to visit Washington at his sister's house. During this drive, she moved the gun from the glove compartment to the area between the driver's seat and center console because Washington's sister lived in a dangerous area. At the sister's house, Benjamin and Washington chatted and drank alcohol. When they ran out of liquor, they went to a liquor store. Washington told Benjamin that she was drunk and insisted on driving to the liquor store. The two then drove around town while drinking and listening to music.

Benjamin described what happened when officers stopped the car. She testified that when an officer asked if there was a gun in the car, she responded that her gun was in the glove compartment. She identified the gun found next to the driver's seat as her weapon. She testified that during that evening, she and Washington had not talked about the gun. She told the jury that she did not believe Washington knew the gun was between the driver's seat and center console because it was dark and they were both drunk.

At the trial's conclusion, the district court instructed the jury that to convict Washington, it had to find beyond a reasonable doubt that he "knowingly possessed a firearm or ammunition." Doc. 59 at 37. The court explained that the law recognized several kinds of possession including actual, constructive, sole, and joint possession. The court instructed that a person has "actual possession" of a thing if he "knowingly has direct physical control of it" and "constructive possession" of a thing if he "doesn't have actual possession of it[] but has both the power and intention to take control over it later." *Id.* at 38. And the court explained that a person

has "sole possession" of a thing if he "is the only person to possess it" and "joint possession" if he is among "two or more people [who] share possession of it." *Id.*

The court also instructed the jury about the requirement that the defendant act "knowingly." It instructed that "knowingly" referred to an act "done voluntarily and intentionally and not because of a mistake or by accident." *Id.* at 39.

Washington asked the court to give the following additional instruction regarding mere presence:

> Mere presence does not alone establish possession. Indeed, mere proximity to the firearm or ammunition or awareness of its location is not, without more, sufficient to establish possession.

> Similarly, mere presence in the property where the firearm or ammunition is located, or mere association with the person who owns or controls the firearm or ammunition, is not, without more, sufficient to establish possession.

Doc. 23 at 20. The court refused to give the instruction, explaining that its instructions already covered mere possession.

During deliberations, the jury asked the court to clarify the meaning of the phrase "take control of" for purposes of "constructive possession." Doc. 32 at 1. The court instructed the jurors to use their common understanding of the phrase.

The jury ultimately found Washington guilty of possessing a firearm as a convicted felon. The court sentenced him to 46 months' imprisonment.

## II.

We "review a district court's refusal to give a defendant's requested theory-of-the-defense instruction for an abuse of discretion." *United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir. 2008).

Although we generally review *de novo* the constitutionality of a statute, we review for plain error when a defendant raises his constitutional challenge for the first time on appeal. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). To show plain error, a defendant must establish (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* An error is plain only if it is contrary to a federal statute or on-point precedent from this Court or the United States Supreme Court. *United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013).

## III.

Washington raises two issues on appeal. First, he argues that the district court erred when it refused to give his proposed jury instruction. Second, he argues that the federal prohibition on felons possessing firearms is facially unconstitutional. We address each issue in turn.

## A.

Washington argues that the district court abused its discretion when it refused to give his proposed instruction regarding mere presence. A district court abuses its discretion when it refuses to give a requested instruction if (1) "the requested instruction was a correct statement of the law," (2) "its subject matter was not substantially covered by the charge actually given," and (3) "its subject matter dealt with an issue in the trial court that was so important that the failure to give it seriously impaired the defendant's ability to defend himself." *Woodard*, 531 F.3d at 1364 (internal quotation marks omitted). A theory-of-defense charge is unwarranted if "the charge given adequately covers the substance of the requested instruction." *United States v. Ndiaye*, 434 F.3d 1270, 1293 (11th Cir. 2006).

Here, the district court did not abuse its discretion when it refused to give Washington's proposed instruction because the court's other instructions adequately covered the substance of the proposed instruction. The court instructed the jury that it needed to find that Washington "knowingly" possessed the gun and defined "knowingly" as "an act . . . done voluntarily and intentionally and not because of a mistake or by accident." Doc. 59 at 39. Having received these instructions, the jury could not have attributed possession to Washington based on his mere presence in the vehicle where a gun was found because mere presence would not establish voluntary and intentional possession. *See Woodard*, 531 F.3d at 1365.

The fact that the jury asked a question during deliberations about the meaning of the phrase "take control of" does not change our analysis. The court instructed the jury that to convict Washington, it had to find that he "knowingly" possessed the gun, and the court's definition of "knowingly" made clear that he could not be convicted based on his mere presence. We thus conclude that the district court did not abuse its discretion in refusing to give Washington's proposed instruction.

## B.

We now turn to Washington's challenge to the constitutionality of 18 U.S.C. § 922(g)(1), which generally prohibits individuals with felony convictions from possessing firearms or ammunition. According to Washington, this prohibition runs afoul of the Second Amendment, which states that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Because Washington raises his constitutional challenge for the first time on appeal, we review for plain error only.[3] We conclude that he has not shown plain error.

---

[3] Washington argues that even though he did not raise a Second Amendment challenge below, we should review this issue *de novo* because he is raising a jurisdictional issue. But he cites no authority, and we have found none holding that the question whether a statutory prohibition on a person's possession of a firearm or ammunition violates the Second Amendment implicates jurisdiction. Because we conclude that Washington's constitutional challenge does not raise a jurisdictional issue, plain error is the appropriate standard of review.

To assess the constitutionality of the prohibition on felons possessing firearms, we begin with the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Heller*, the Court considered a Second Amendment challenge to a District of Columbia law that barred the private possession of handguns in homes. *Id.* at 635. After considering both the text and history of the Second Amendment, the Court concluded that it conferred on an individual a right to keep and bear arms. *Id.* at 595. The Court held that the ban on handgun possession in the home violated the Second Amendment. *Id.* at 635. But the Court acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. Indeed, the Court labeled such restrictions as "presumptively lawful." *Id.* at 627 n.26.

After *Heller*, we considered a constitutional challenge to § 922(g)(1)'s prohibition on felons' possession of firearms. *See United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010). We held that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771.

Several years later, the Supreme Court considered a Second Amendment challenge to New York's gun-licensing regime that

*See United States v. Alfonso*, 104 F.4th 815, 828–29 & n.18 (11th Cir. 2024) (explaining that plain error review applies to a "garden variety constitutional attack" that the defendant failed to raise in the district court).

limited when a law-abiding citizen could obtain a license to carry a firearm outside the home. *See N.Y. State Rifle & Pistol Ass'n v. Bruen* 597 U.S. 1, 11 (2022). The Court recognized that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. The Court explained that to determine whether a restriction on firearms was constitutional, courts must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17. If the regulation does cover such conduct, the court may uphold it only if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. *Bruen* emphasized that *Heller* established the correct test for determining the constitutionality of gun restrictions. *See id.* at 39. And, like *Heller*, *Bruen* described Second Amendment rights as extending only to "law-abiding, responsible citizens." *Id.* at 26 (internal quotation marks omitted).

Based on *Bruen*, Washington challenges § 922(g)(1)'s prohibition on felons possessing firearms. He argues that the prohibition is unconstitutional because there is no "'tradition' of felon disarmament dating to the Founding." Appellant's Br. 11.

Washington cannot demonstrate plain error because he has not identified any on-point precedent from this Court or the United States Supreme Court holding that § 922(g)(1)'s prohibition on felons possessing firearms is unconstitutional. To the contrary, his constitutional argument is foreclosed by precedent. After *Bruen*, we

considered another Second Amendment challenge to § 922(g)(1). *See United States v. Dubois*, 94 F.4th 1284, 1289 (11th Cir. 2024). We held that the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to law-abiding and qualified individuals and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful." *Id.* at 1293 (internal quotation marks omitted). Although the defendant argued that *Bruen* abrogated our decision in *Rozier*, we observed that even in *Bruen* the Supreme Court continued to describe the right to bear arms as extending only to "law-abiding, responsible citizens." *Id.* (internal quotation marks omitted). We thus concluded that *Bruen* did not abrogate *Rozier*. Because *Rozier* foreclosed a Second Amendment challenge to § 922(g)(1), we affirmed the defendant's conviction. *Id.*

The Supreme Court's recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), does not change our analysis. In *Rahimi*, the Court considered a Second Amendment challenge to the federal statute that prohibits an individual who is subject to a domestic violence restraining order from possessing a firearm when the order includes a finding that he represents a credible threat to the safety of an intimate partner or a child of that partner or individual. *See id.* at 1898 (citing 18 U.S.C. § 922(g)(8)). It held that this firearm restriction was constitutional. And it once again declared that the prohibition on "the possession of firearms by 'felons' . . . [is] 'presumptively lawful.'" *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26).

**AFFIRMED.**